IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

LESLIE JEAN THOMPSON,

           Plaintiff,

    v.

CAROLYN W. COLVIN, Acting
Commissioner Social Security
Administration,

           Defendant.

CIVIL ACTION FILE

NO. 1:13-CV-03456-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision of the Commissioner of the Social Security Administration which denied her application for disability insurance benefits. For the reasons set forth below, the court **ORDERS** that the Commissioner's decision be **REVERSED** and that the case be **REMANDED** for further proceedings.

## I.    Procedural History

Plaintiff Leslie Jean Thompson filed an application for disability insurance benefits on March 24, 2010, alleging that she became disabled on May 31, 2009. [Record ("R.") at 12, 64-66, 117]. After her application was denied initially and on

reconsideration, an administrative hearing was held on October 19, 2011. [R. at 12, 29-63]. The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's application on January 23, 2012, and the Appeals Council denied Plaintiff's request for review on March 22, 2013. [R. at 1-4, 12-22]. Having exhausted her administrative remedies, Plaintiff filed a complaint in this court on October 21, 2013, seeking judicial review of the Commissioner's final decision. [Doc. 1]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II.    Facts

The ALJ found that Plaintiff has major depressive disorder, multiple sclerosis, mild ataxia, and decreased vision, impairments that are "severe" within the meaning of the Social Security regulations. [R. at 14]. However, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 15]. The ALJ found that, although Plaintiff is unable to perform any past relevant work, there are jobs that exist in significant numbers in the national economy that she can perform. [R. at 20-21]. As a result, the ALJ concluded that Plaintiff has not been under a disability from May 31, 2009, the alleged disability onset date, through the date of the ALJ's decision. [R. at 21].

2

The decision of the ALJ [R. at 12-22] states the relevant facts of this case as modified herein as follows:

The evidence shows that the claimant has a history of onset diagnosis of multiple sclerosis after experiencing grand mal seizures. She is treated by neurologist Joseph Hormes, M.D., for multiple sclerosis as well as her seizure disorder. Dr. Hormes has consistently noted throughout the relevant period that the claimant is prescribed Keppra daily for control of her seizure disorder, that she has had no seizures since 1999, and that she is compliant with her prescribed medication regimen. Additionally, the claimant testified that she has had no seizures, which is consistent with her report in a Seizure Questionnaire. (Exhibit ("Ex.") 15E; Ex. 16E at 3; Ex. 2F at 4, 18; Ex. 15F at 4).

At the hearing, the claimant testified that she is 49 years old and lives with her spouse. She gives voice lessons four to five times a month and charges $50.00 per hour. She last worked in 2009 at Woodward Academy for approximately two days per week during the school year. She testified that she has used a walker for eight years and that it was prescribed by her doctor. She can walk without the walker if she holds onto the wall or another person. She has problems with bladder control and uses a catheter but acknowledged that this problem is not as severe as it has been. She has

3

memory issues and fatigue and has had tremors in the right hand since 2009. She has no problems with her left hand. During a typical day, she takes medicines and then goes back to sleep until 9:00 a.m. when she again takes medicines. She makes coffee and rests. She washes dishes while sitting in a chair, does laundry, and drives to the grocery store and church. The farthest that she drives alone is to Birmingham, Alabama, to see her family. According to the claimant, she can stand for four minutes, sit for thirty minutes, and lift two pounds.

The claimant has alleged disability due to major depressive disorder. In September 2009, Dr. Hormes reports that the claimant's depression is well controlled with Celexa. Progress notes from March 2010 and March 2011 also indicate that her depression is well controlled with Celexa. (Ex. 2F at 3-4, 6-7; Ex. 15F at 5).

In a May 2010 Psychological Evaluation, State Agency consultant Steven Berger, Ph.D., assesses the claimant with major depressive disorder, recurrent, in full remission. He notes that she reports having depression since 2004 and taking Celexa that is effective. Dr. Berger reports that the claimant rates her depression at a level of one on a scale from one to ten. He opines that, although she has a full-scale IQ score of 79 per the Wechsler Adult Intelligence Scale IV, within the borderline intellectual range, this was an underestimate of her true functioning. Furthermore, Dr. Berger

4

opines that the claimant is able to understand and carry out complex instructions, has no history of difficulties with supervisors or coworkers, and was unlikely to decompensate under stressful work conditions.  (Ex. 4F at 6-7; Ex. 7F at 3).

There is no evidence that the claimant has ever required psychiatric hospitalization for treatment of depression.  There is also no evidence that the claimant has been treated by any mental health professional during the relevant period. Dr. Berger opined that the claimant functions at a rate significantly higher than borderline, consistent with her college education, teaching at private school, and recent history of self-employment.  (Ex. 2E at 3; Ex. 14E at 4).

As for multiple sclerosis, the evidence shows that the claimant reports being diagnosed with the condition in 1999, following an onset initially marked by grand mal seizures.  A December 2008 MRI of the claimant's brain shows multiple lesions consistent with a diagnosis of multiple sclerosis.  Progress notes from Dr. Hormes in September 2009 show that he assesses the claimant with a neurogenic bladder secondary to multiple sclerosis, and he notes that she successfully manages use of an intermittent self-catheter.  In progress notes from March 2010, Dr. Hormes assesses her with multiple sclerosis that is relapsing and remitting and a neurogenic bladder in remission.  Dr. Hormes notes that the claimant has a Rubral tremor in the right upper

5

extremity and prescribes treatment of Avonex intramuscularly once a week.  General examination notes from Primary Care Partners in March 2011 show that the claimant is diagnosed with multiple sclerosis and that her reflexes are normal, with treatment deferred to neurology.  (Ex. 2F at 4, 22-23; Ex. 4F at 3; Ex. 8F; Ex. 12F; Ex. 16F at 35, 40, 45, 47).

Dr. Hormes opines that the claimant is unable to perform any job that requires physical activity.  Although Dr. Hormes reports that she has significant difficulty from ataxia, he also acknowledges that her gait and station are within normal limits.  The record also shows that Mandana Amiri, M.D., opined that the claimant has significant difficulties with self-bathing, cleaning the house, cooking, dressing, feeding herself, and living independently.  However, Dr. Amiri also reports that the claimant is able to converse in a meaningful manner, find her way home, recognize familiar faces, use public transportation and remember her name and is oriented to person, time, and place.

With regard to mild ataxia, Dr. Hormes in March 2009 notes that the claimant has ataxia but is improved and ambulating without any assistive device.  March 2010 progress notes indicate that her ataxia is considerably improved and that, although she cannot perform a tandem walk, she is almost back to baseline and gait and station are

6

within normal limits.  Dr. Hormes encourages her to walk with a wide gait and gives her fall precautions.  (Ex. 2F at 3-4, 6).

The evidence shows that the claimant has made considerable improvement in ataxia and that she is able to walk without the use of a handheld assistive device. Although she is reported as unable to do a tandem walk, she has normal strength, sensation, and coordination.  Notably, in a functional report, the claimant states that despite having hand tremors and ataxia, she is able to shop for groceries for an hour using the shopping cart as a walker and sings in her church choir two to three times weekly.  (Ex. 10E at 6-7; Ex. 10F at 2, 6).

As for decreased vision, East Cobb Health Center May 2010 vision testing shows that the claimant's vision in her right eye is 20/50 and in the left eye is 20/100. An examination from Wal-Mart Vision Center in September 2010 shows that the claimant is advised to wear glasses when driving.  (Ex. 3F; Ex. 9F at 2; Ex. 15F at 67).

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.   Standard of Review

An individual is considered to be disabled if she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental

7

impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).   The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do her previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards." Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."   Id. at 1440.   "Even if the evidence preponderates against the [Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

8

"The burden is primarily on the claimant to prove that [s]he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving her disability. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that she is not engaged in substantial gainful activity. See id. The claimant must establish at step two that she is suffering from a severe impairment or combination of impairments. See id. At step three, the Commissioner will determine if the claimant has shown that her impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. If the claimant is able to make this showing, she will be considered disabled without consideration of age, education, and work experience. See id. "If the claimant cannot prove the existence of a listed impairment, [s]he must prove at step four that [her] impairment prevents [her] from performing [her] past relevant work." Doughty, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age,

9

education, and past work experience to determine whether the claimant can perform other work besides [her] past relevant work."  Id.  If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends.  See 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV.    Findings of the ALJ

The ALJ made the following findings of fact:

1.    The claimant meets the insured status requirements of the Social Security Act through  December 31, 2013.

2.    The claimant has not engaged in substantial gainful activity since May 31, 2009, the alleged onset date.  (20 C.F.R. § 404.1571, et seq.).

3.    The claimant has the following severe impairments: major depressive disorder, multiple sclerosis, mild ataxia, and decreased vision.   (20 C.F.R. § 404.1520(c)).

4.    The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1.  (20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526).

5.    The claimant has the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b).  The claimant is able to lift twenty pounds occasionally and ten pounds frequently; stand and walk for six hours in an eight hour workday; and sit for six hours in an eight hour workday with normal breaks.    The claimant can never climb ladders, ropes, and scaffolds; occasionally climb ramp and stairs; and occasionally stoop, kneel, crouch, crawl, and balance.  The claimant can handle and finger with the right upper extremity frequently, and 50% of the time the claimant would require a

10

hand-held assistive device for uneven terrain and prolonged ambulation. The job should require no driving. The claimant should avoid concentrated exposure to extreme heat, extreme vibration, operational control of machinery, unprotected heights, and should avoid all exposure to hazardous machinery. The claimant is limited to work that does not require fine detailed vision.

6.   The claimant is unable to perform any past relevant work. (20 C.F.R. § 404.1565).

7.   The claimant was born on March 17, 1961, and was 48 years old, which is defined as a younger individual age 18-49, on the alleged disability onset date. The claimant subsequently changed age category to closely approaching advanced age. (20 C.F.R. § 404.1563).

8.   The claimant has at least a high school education and is able to communicate in English. (20 C.F.R. § 404.1564).

9.   Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. (See SSR 82-41 and 20 C.F.R. Part 404, Subpart P, Appendix 2).

10.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform. (20 C.F.R. §§ 404.1569 and 404.1569(a)).

11.   The claimant has not been under a disability, as defined in the Social Security Act, from May 31, 2009, through the date of the ALJ's decision. (20 C.F.R. § 404.1520(g)).

[R. at 14-21].

AO 72A

(Rev.8/82)

V.     **Discussion**

Plaintiff Thompson argues that the ALJ committed reversible error when she evaluated the findings and opinions of an examining psychologist. [Doc. 10 at 10-13]. Plaintiff also contends that the ALJ failed to provide an explanation for finding that Plaintiff could frequently handle and finger with her dominant right upper extremity. [Id. at 13-15]. Finally, Plaintiff argues that the ALJ erred in evaluating the findings of her treating neurologist. [Id. at 15-17].

A.     **Dr. Berger's Opinions and Plaintiff's Upper Extremity Limitations**

Dr. Steven Berger is a State agency psychologist who examined Plaintiff in May 2010. The ALJ stated that she accorded substantial weight to the opinions and assessments of Dr. Berger because "they are supported by objective testing." [R. at 19]. However, the ALJ cited selectively from Dr. Berger's evaluation and only adopted some of the limitations found by the examining psychologist. [R. at 16-19]. The ALJ offered no explanation for not including a number of Dr. Berger's opinions in the ALJ's assessment of Plaintiff's residual functional capacity ("RFC"). In her decision, the ALJ noted Dr. Berger's findings that Plaintiff's depressive disorder was in full remission, that Plaintiff reported that the prescription Celexa adequately managed her symptoms of depression, and that she now rates her depression at a level

12

of one on a scale from one to ten.  [R. at 17, 280].  The ALJ also cited to Dr. Berger's

opinion that, although Plaintiff has a full-scale IQ score of 79 on the Wechsler Adult

Intelligence Scale IV, this was an underestimate of her true functioning.  [R. at 17,

280-81].  Finally, the ALJ pointed to Dr. Berger's finding that Plaintiff is able to

understand and implement complex instructions, has no history of difficulties with co-

workers or supervisors, and would not likely decompensate under stressful conditions.

[R. at 17, 281].  All of these findings support the ALJ's RFC assessment.  [R. at 16].

However, other findings made by Dr. Berger were neither acknowledged by the

ALJ nor included in the RFC assessment despite her statement that Dr. Berger's

opinions were entitled to substantial weight.  [R. at 19].  In Winschel v. Comm'r of

Social Security, 631 F.3d 1176, 1179 (11th Cir. 2011), the Eleventh Circuit found that

the ALJ did not adequately consider and weigh the medical opinion evidence.  The

court noted:

> [T]he ALJ did not discuss pertinent elements of the examining
> physician's medical opinion, and the ALJ's conclusions suggest that
> those elements were not considered.  It is possible that the ALJ
> considered and rejected these two medical opinions, but without clearly
> articulated grounds for such a rejection, we cannot determine whether the
> ALJ's conclusions were rational and supported by substantial evidence.

Id.  In the present case, the ALJ committed a similar error.

13

Dr. Berger listed Plaintiff's multiple sclerosis and ataxia (lack of muscle coordination) under "diagnostic impressions" and found that Plaintiff "demonstrated a statistically significant weakness in her processing speed abilities, placing her in the extremely low range." [R. at 280]. The psychologist further noted, "Since the subtests comprising the processing speed index are heavily dependent upon fine motor coordination, it is not unusual that Ms. Thompson's [sic] performed less well on these tasks due to her physiological limitations, specifically hand tremors, resulting from her MS." [Id.]. Dr. Berger stated that Plaintiff's hand tremors also resulted in an extremely low score on an assessment of her visual motor integration. [R. at 281]. Dr. Berger concluded that Plaintiff's "physiological difficulties, specifically, regarding her poor gross and fine motor skills, would likely interfere with necessary, assigned, and timely task completion. Ms. Thompson would likely experience difficulties sustaining a routine regarding keeping pace in a 9 to 5 work week due to physiological complications from her MS." [Id.]. None of these findings and opinions were mentioned by the ALJ in her decision. [R. at 17].

"[T]he ALJ must state with particularity the weight given to different medical opinions and the reasons therefor." Winschel, 631 F.3d at 1179 (citing Sharfarz v. Bowen, 825 F.2d 278, 279 (11th Cir. 1987) (per curiam)); accord 20 C.F.R. §§

14

404.1527, 416.927.  "In the absence of such a statement, it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  Cowart v. Schweiker, 662 F.2d 731, 735 (11th Cir. 1981).  The ALJ did not address statements made by Dr. Berger which reflect his judgment about Plaintiff's hand tremors and poor motor skills and the impact these would have on her ability to maintain pace and complete tasks in a timely manner while working on a regular and continuing basis.  Although the ALJ stated that she gave substantial weight to Dr. Berger's opinion, she rejected many of his opinions without explanation and found that Plaintiff had no limitations in her ability to complete tasks and maintain a consistent and competitive pace.  [R. at 16]. The ALJ may have considered and implicitly rejected Dr. Berger's opinions, but the court is unable to determine if the rejection was supported by substantial evidence because the ALJ did not offer any supporting reasons.  See Cowart, 662 F.2d at 735.

"An ALJ must consider all medical evidence that is credible, supported by clinical findings, and relevant to the question at hand. . . ."  McCray v. Massanari, 175 F. Supp. 2d 1329, 1336 (M.D. Ala. 2001) (citation and internal quotation marks omitted).  Dr. Berger's opinions regarding Plaintiff's limitations in task completion and pace satisfy these criteria, yet there is no indication that they were considered by

15

the ALJ in evaluating Plaintiff's alleged disability.  [R. at 281].  Furthermore, the ALJ's failure to explain her reasons for rejecting Dr. Berger's opinions was not harmless error.  "Ordinarily, RFC is an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis.  A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule."  SSR 96-8p, at *1.  Dr. Berger's evaluation is significant because it reveals that he believed Plaintiff would have difficulties keeping pace and performing sustained work activities on a regular and continuing basis.  At the administrative hearing, the ALJ asked the vocational expert whether a hypothetical person with Plaintiff's limitations could work if she "occasionally exhibit[ed] an inability to maintain concentration, persistence and pace, and that would pour over into task completion, so just not being able to complete tasks, complete a workweek."  [R. at 59].  The vocational expert testified that such a person would not be able to sustain competitive employment.  [Id.].  Based on these facts, the court finds that remand is necessary in order for the ALJ to properly evaluate Dr. Berger's opinions.

Dr. Berger's findings of Plaintiff's hand tremors and poor gross and fine motor skills are consistent with numerous findings made by Dr. Joseph Hormes, Plaintiff's

16

treating neurologist.  Medical records from 2008 through 2011 reveal that Dr. Hormes diagnosed Plaintiff with multiple sclerosis and ataxia and found that she had Rubral tremor in the right upper extremity.   [R. at 252-65, 430-49].   Rubral tremor "designates a combination of rest, postural, and action tremors due to midbrain lesions in the vicinity of the red nucleus. . . .  Signs of ataxia and weakness may be present.  Common causes include cerebrovascular accident and multiple sclerosis." http://www.clevelandclinicmeded.com/medicalpubs/diseasemanagement/neurology /tremors/Default.htm (last visited February 26, 2015).

The findings of Dr. Berger and Dr. Hormes are also consistent with Plaintiff's testimony.   At the administrative hearing, Plaintiff testified that she experiences constant tremors in her right hand, which is her dominant hand, and that she cannot hold objects in this hand.  [R. at 33, 48-49].  Plaintiff stated that she is unable to use her dominant hand to eat soup and that, when she was still teaching voice lessons, she had difficulty playing the correct keys on the piano due to the tremors.  [Id.].  Plaintiff also reported that because of her hand tremors she has problems using buttons and zippers.  [R. at 167, 192].

Despite the evidence of Plaintiff's limitations in her right hand, the ALJ found that Plaintiff "can handle and finger with right upper extremity frequently." [R. at 16].

17

The ALJ did not explain how she arrived at this finding.  Plaintiff correctly notes that even the most recent evaluation conducted by a State agency consultative physician, which the ALJ rejected because it understated Plaintiff's limitations, found that Plaintiff could only occasionally reach, handle, and finger.  [R. at 19, 322].  Given the extensive documentation showing that Plaintiff experiences constant tremors and has poor gross and fine motor skills in her right hand, the court concludes that the ALJ erred when she failed to explain her finding that Plaintiff is able to handle and finger with her right upper extremity on a frequent basis.  Remand is necessary to cure this deficiency.

### B.    Dr. Hormes' Findings on Plaintiff's Lower Extremities

Plaintiff also argues that the ALJ erred in evaluating Dr. Hormes' findings regarding the impairments in her lower extremities.  [Doc. 10 at 15-16].  According to Plaintiff, the ALJ failed to explain how Plaintiff's reduced proprioception (awareness of the body position) and moderate spastic paraparesis (spasticity and muscle weakness) are consistent with the ability to perform the six hours of standing or walking required for light work.  [Doc. 10 at 15].  In support of Plaintiff's contention that she is more limited than the ALJ found in her ability to stand and walk, Plaintiff cites to Dr. Hormes' statement that she "is unable to perform any job that

requires physical activity." [R. at 431, 434]. The court finds Plaintiff's arguments unpersuasive.

The relevant regulations provide that an opinion from a medical source that a claimant is "disabled" or "unable to work" is not a medical opinion. See 20 C.F.R. §§ 404.1527(d)(1), 416.927(d)(1). Instead, it is an opinion on an issue reserved to the Commissioner because it is an administrative finding that is dispositive of a disability case. See id. Such an opinion is not entitled to any special significance. See 20 C.F.R. §§ 404.1527(d)(3), 416.927(d)(3). This was noted by the ALJ in her decision. [R. at 18]. Furthermore, while Dr. Hormes broadly asserted that Plaintiff "is unable to perform any job that requires physical activity," there is no indication that the physician believed that Plaintiff's inability to work was due to limitations in her ability to stand or walk. Dr. Hormes never offered an opinion about Plaintiff's limitations in the use of her lower extremities. In fact, as the ALJ noted, "there is no evidence that any physician has placed the claimant under any limitations in her abilities to stand, walk, or sit." [R. at 19].

Even assuming that Dr. Hormes had offered an opinion that Plaintiff was significantly limited in the ability to use her lower extremities, the ALJ had good cause not to accept such an opinion because it is inconsistent with the doctor's own

19

medical records and because evidence in the record supports a contrary finding.  See Winschel, 631 F.3d at 1179.  The Commissioner points out that Dr. Hormes' treatment notes reveal that after Plaintiff's alleged disability onset date, she consistently walked with a normal gait and station.  [R. at 18, 253, 256, 314, 431, 434, 437, 440].  The ALJ cited to these findings in support of her decision not to give controlling weight to Dr. Hormes' opinion.  [R. at 18].  The ALJ also noted, "Although [Plaintiff] is reported as unable to do a tandem walk, she has normal strength, sensation, and coordination."  [R. at 18].  Plaintiff cites to her need of an assistive device, and she testified at the hearing that Dr. Hormes prescribed a walker in approximately 2003 or 2004.  [R. at 34-35].  But in treatment records from September 2009 and following, Dr. Hormes reported that Plaintiff was "ambulating without any assistive devices." [R. at 252-255, 436, 439].  Although remand is warranted for the reasons discussed *supra*, the court finds the ALJ did not err when she evaluated Dr. Hormes' findings regarding Plaintiff's alleged limitations in her lower extremities.

## VI.    Conclusion

In summary, the ALJ did not properly evaluate the opinion of examining psychologist Dr. Berger who found that Plaintiff's physiological complications caused by her multiple sclerosis would likely interfere with her ability to maintain pace and

20

complete tasks in a timely manner and that she would likely experience difficulties when attempting to work on a regular and continuing basis.  Although the ALJ discussed the findings of Dr. Berger which supported her RFC assessment, the ALJ made no mention of those findings which were contrary to the RFC.  Dr. Berger's opinions and findings regarding Plaintiff's hand tremors and motor skills were consistent with Plaintiff's testimony and the findings of her long-time treating neurologist.  Because the ALJ failed to provide any reasons for rejecting Dr. Berger's opinions and did not explain how she concluded that Plaintiff is able to frequently "handle and finger with right upper extremity," the court is unable to determine whether the ALJ's decision is supported by substantial evidence.  [R. at 16].

For these reasons, the undersigned concludes that the ALJ did not apply the proper legal standards.  It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the above discussion.  The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

**IT IS FURTHER ORDERED** that, in the event past due benefits are awarded to Plaintiff upon remand, Plaintiff's attorney may file a motion for approval of attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days

21

after the date of the Social Security letter sent to Plaintiff's counsel of record at the

conclusion of the Agency's past-due benefit calculation stating the amount withheld

for attorney's fees.  Defendant's response, if any, shall be filed no later than thirty

days after Plaintiff's attorney serves the motion on Defendant.  Plaintiff shall file any

reply within ten days of service of Defendant's response.

      **SO ORDERED**, this 10th day of March, 2015.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A

(Rev.8/82)